## CLAGGETT *v.* SIMES.

Where a question, addressed to the judicial discretion of the court of common pleas, has been examined and decided by that court, the merits of the question will not be re-examined by the superior court.

A decision made by the court of common pleas, upon a matter addressed to their discretionary authority, is not a judgment, in the strict and technical meaning of the word.

But according to our practice, and by analogy to other proceedings in courts of law, such a decision has the conclusive effect of a judgment, where the matter is between the same parties, and depends upon the same evidence.

The plaintiff presented a petition to the court of common pleas, praying that an action might be brought forward upon the docket, and that a certain judgment rendered therein against him might be vacated; but the petition, after a hearing thereon, was dismissed. He subsequently presented another petition to that court, containing the same allegations, in substance, and depending upon the same state of facts, and praying also for the same relief. The question was transferred by the court of common pleas to this court, whether the former proceedings had in the cause, constituted a bar to the relief prayed for. *Held*, that the former decision of the court of common pleas must be considered as conclusive.

PETITION to vacate a judgment of the court of common pleas.

The petition, which was addressed to the justices of the court of common pleas, stated that at the February term, 1849, of that court, an action was pending, founded upon a deed of mortgage, in the name of William Simes against the petitioner, William Claggett; that the parties made a written agreement, that when the action should come in order for trial, and the plaintiff should comply with certain terms or conditions specified in the agreement, he should have judgment. The following is a copy of the agreement:

" Court of Common Pleas, Feb. Term, 1849.
Rockingham, ss.

William Simes, plff. *v.* William Claggett, dft.

The said parties agree that when this action comes in order for trial, judgment shall be rendered in favor of the

plaintiff, on the mortgage executed by the said Claggett to said Simes, as of mortgage, for the premises described in the mortgage, in the usual form—provided that the deeds relative to the sale of the premises at public auction, in the year 1848, to John N. Handy, or any other, and by said Handy to any other, be first cancelled and annulled; it being understood and agreed that said sale be set aside and be invalid, but the expenses of said sale not exceeding eight dollars, and the premiums of insurance, paid by Mr. Simes on said property, are to be added to the debt named in the mortgage, and included in said judgment. It is further agreed that when said Simes takes legal possession under a writ of possession, of the demanded premises, he will lease the land or farm adjoining the farm of Samuel Parsons to said Claggett, until the first day of December next, and no longer, for the rent of one dollar for that time, and the dwelling-house of said ·Claggett to him, until the first day of July next, for the rent of one dollar.

WILLIAM SIMES,

WILLIAM CLAGGETT."

The petitioner then represented that although he did not attend the February term, he believed that the action was not in order for trial at that term, being numbered 355; that during the term, the plaintiff had not complied with the conditions of the agreement; that he had evidence that the court ordered the action to be continued; that, nevertheless, the plaintiff, in disregard of the order of the court, during the ensuing vacation, to wit, on the second day of June, with the leave, consent or agency of the clerk of this court, caused a judgment for the demanded premises to be entered up as of the last day of the February term, and took out a writ of possession, and on the first day of September, 1849, caused it to be levied on the demanded premises; that on the thirtieth day of August, 1849, the petitioner paid to Simes, in part for the debt secured by the mortgage, the

sum of $550, leaving due the sum of $1053; that he val-
ues the real estate mortgaged, at $5,000; that having no
certain information at the time of the levy of the writ of
possession, nor until a long time afterwards, relative to the
erroneous entry of judgment during the vacation, he was
obliged either to take a lease of the premises for the term of
one year under Simes, or else to be turned out of his house,
and be deprived of the crops growing on the farm; that
within one year after the levy he made arrangements to
discharge the balance of the debt, but was finally defeated
by a contrivance or means which it may not be necessary
now to state, although his part of the agreement was com-
plied with. He then prayed the court to afford him such
relief as law and justice might require; that the entry of
judgment might be corrected, vacated, set aside and render-
ed null and void, and that the action might be brought for-
ward on the docket, should the court deem it proper.

The facts, as they appeared before court, were substan-
tially as follows: Claggett did not attend the February
term of the court. Upon the first call of the docket, and in
accordance with the answer of some gentleman of the bar,
the action was entered "continued." A few days after,
upon motion of Mr. Emery, who was counsel for Simes,
and upon a suggestion that the entry of a continuance was
made without any assent of the plaintiff, and against an
express agreement of the parties in writing, that judgment
should be entered in favor of the plaintiff, the entry "*con-
tinued*" was directed to be struck from the docket, and an
entry of "judgment by agreement" made in its stead.
These entries were properly made upon the clerk's docket.
Before the close of the term the attention of the court was
called to the case by Mr. Wells, who appeared for Mr. Clag-
gett, and it was stated that the entry of judgment by agree-
ment was improperly made, as the agreement for judgment
was conditional, and the conditions had not been complied
with. This was on the last day of the term, or the day pre-

ceding, and Mr. Emery was not present. The court, not being satisfied that the entry of judgment by agreement was properly made, directed it to be struck out, and the case to be continued. These entries were made by the presiding justice and one of the associate justices of the court, and by many members of the bar, in their private dockets, but the clerk, either from accident or some other cause, made no change upon the docket of the court, and the entry of "judgment by agreement" remained there when the court adjourned. Mr. Simes' counsel having upon his own docket only the entry "judgment by agreement," and not being present when the last order of the court was made, and not being aware, as he states, of its existence, wrote to the clerk, after the expiration of sixty days, for a writ of possession, and filed the writ, mortgage and note, the said agreement, and the two deeds referred to in the agreement, with the signatures erased, and with these words written across the face, " cancelled in accordance with an agreement between William Simes and William Claggett, made at Feb. T. C. C. Pleas, 1849.

WILLIAM SIMES,

by JAMES W. EMERY, his atty."

The clerk, on the second of June, 1849, made out and sent to Mr. Emery a writ of possession, and possession was delivered by the officer to Simes on the first of September. Simes then made an indenture of lease under seal, in two parts, one of which was executed by Claggett, conveying the premises to Claggett for the term of one year, and reciting that Simes had recovered judgment against Claggett for seizin and possession of the premises; that he had sued out a writ of possession on the judgment, dated on the second day of June, 1849, and that he had on that day been put in possession of the premises. Claggett covenanted to pay $10 as rent and the taxes, and to deliver up the premises

at the end of the term, and Claggett remained in possession thereof.

On the 27th of March, 1849, Mr. Wells wrote to Claggett, informing him that the action was continued. Early in August, 1849, Claggett was aware that a writ of possession had issued, and was in the hands of an officer; and on the 27th of that month he wrote to the presiding justice, inquiring whether the action was continued, and at the December term, 1849, was informed by him that the action was continued.

No application was made by Claggett to the court, or to any justice thereof, for any order or proceeding in relation to the judgment until the February term, 1851, of the court of common pleas.

At the February term, 1849, the action was No. 355 on the docket, and the last case tried by the jury at that term was No. 146.

On the 19th of October, 1850, a part of the mortgaged property was sold by Simes at auction. Claggett attended the sale, and gave notice that the judgment had been illegally rendered against him.

At the February term, 1851, of the court of common pleas, Claggett moved that the action should be brought forward on the docket, and the entry of judgment vacated. A case was stated for the consideration of the superior court and transferred, presenting substantially the facts above recited, and at the July term, 1851, of the superior court, it was adjudged that " the motion by Claggett to bring forward the above action, for the purpose of vacating the judgment, be overruled."

This order was entered by the clerk upon the docket of the superior court, and a like entry made by him upon the docket of the court of common pleas, and the action was not again brought forward upon the docket of that court.

At the September term, 1851, of the court of common pleas, Claggett presented his petition to the court, in which,

among many irrelevant matters, he states the foregoing facts, and says that when he was informed of the transfer of the question arising upon his motion to vacate the judgment, he "raised the question as an objection, that the superior court had no jurisdiction or authority to order the court of common pleas to amend its records in the particulars referred to; that the only material facts which he wished to establish were the erasure of the entry of judgment, and of the order for a continuance;" that the case so transferred was entered at the July term, 1851, of the superior court, when he was prepared for a hearing, and stated to the court that he was ready to submit his argument in writing, but the case was continued *nisi;* that he made due inquiry when the court would hear himself and his counsel, but received no information; that the justices, not probably having had time or opportunity to examine the petition and papers on file, which the parties were at liberty to refer to in argument, as well as to the docket of the court of common pleas, misconceived, in some particulars, the motion, or at least its terms;" but stated that he would make no complaints, if the reason of the overruling was that the court of common pleas "have the exclusive jurisdiction and authority in respect to amending or correcting its own records;" that he wished to offer evidence that " a conspiracy or combination had been formed by certain persons, hereafter to be designated, to effect his pecuniary ruin; that by artful and subtle contrivances the payment of said mortgage was defeated, and that divers other contrivances and means had been resorted to, in order to divest him of his property."

He prays for a further hearing, and that the entry of judgment may be vacated.

Upon this application, notice was ordered and given to Simes, who appeared and moved that the petition be dismissed, on the ground that the whole subject-matter had been once adjudicated.

The question was transferred to this court whether the

former proceedings constitute a bar to the relief now prayed for.

*Claggett, pro se,* with whom was *Wells.*

*Emery,* for the petitionee.

GILCHRIST, C. J.  We are requested in this case, by the petitioner, to decide, as a matter of law, that the court of common pleas are bound to reverse the determination they have made upon the motion of the petitioner, and that the former proceedings of that court constitute no bar to the relief now prayed for.   It is urged upon us that the court misconceived the motion, and did not understand the case in all its bearings, and that the evidence tends strongly to prove the various allegations made in the petition.   We are not aware that the case is so complex and difficult to be understood, that persons of ordinary intelligence, after a reasonable intellectual effort, could not readily apprehend it, or that the principles of law which should govern the case are not sufficiently simple and easy of application.   All the substantial facts upon which the petitioner relies, have long been before the court of common pleas, and have there been examined and considered.   The court were called upon to weigh the evidence and the arguments upon it, and to determine whether, in the exercise of a sound judicial discretion, they should grant the prayer of the petitioner.   Not only has this been done by that court, but the merits of the question have been laid before us.   The petitioner has presented to us a great mass of papers, most of them, however, having no pertinency to the case.   They have, however, been carefully examined, and the petitioner has had the fullest opportunity to be heard.

In considering this matter, we have laid all the allegations of fraud entirely out of the case.   It is but right that we should say that we have found no evidence of any " con-

Claggett *v.* Simes.

spiracy or combination " to effect the " pecuniary ruin " of the petitioner; nor is there the slightest evidence tending to prove what were the " artful and subtle contrivances " to defeat the payment of the mortgage. All these matters pertain to the merits of the controversy which have been considered by the court of common pleas, and the question need not be complicated by considering what effect the proof of fraudulent conduct would have upon the prayer of the petition. The only question before us is, whether we shall direct the court of common pleas that their former decision constitutes no bar to the relief now prayed for by the petitioner.

Where a matter is within the discretionary authority of a court of competent jurisdiction, and their discretion has been exercised, we have repeatedly held that we will not re-examine the merits of the question, in order to determine whether the discretion of the court has been properly exercised. And for this there are strong reasons. When evidence is laid before a court, upon which it is their duty to pass, unless their judgment be final, there would be no end to litigation. And although, in a given case, there may have been an injudicious exercise of judicial discretion, it is better that the general rule should be observed, than that parties should never feel confident that their suits have terminated.

In the case of *Greathead v. Bromley,* 7 D. & E. 455, a summary application was made to set aside an annuity, and the rule was discharged upon discussion of the merits. It was held by the court that they would not entertain a similar application between the same parties, on the same state of facts. Lord *Kenyon* said " the act of parliament gives summary jurisdiction to the court, which is to be exercised according to sound legal discretion, and we cannot govern our discretion better than by analogy to the proceedings at common law. * * * As it appears that all the facts now brought forward in the affidavits in support of the rule, ex-

26

isted at the time of the former rule, and every objection which can now be urged might then have been brought forward, the matter must now be taken to have passed *in rem judicatam*, and the former decision is conclusive between the parties." In the subsequent case of *Schumann* v. *Weatherhead*, 1 East 537, a similar application was made to discharge an annuity, which had been canvassed on the merits and the rule discharged. The defendant obtained another rule, calling on the plaintiff to show cause why the judgment entered in the cause should not be vacated. Lord *Kenyon* said that the opinion in *Greathead* v. *Bromley* " was grounded upon the maxim that *interest republicæ ut sit finis litium.* Now unless we are prepared to rescind our opinions then expressed, that case must govern the present, for it stands directly on the same ground in every word and circumstance. And though if we had then been as fully apprised of all the circumstances as now, it might have altered our opinion; yet it is better for the general administration of justice that an inconvenience should sometimes fall upon an individual, than that the whole system of law should be overturned. and endless uncertainty be introduced. * * * I think the rule was wisely and not arbitrarily laid down in the case referred to, founded upon analogy to proceedings in other cases." These are both cases where the same court, which had a judicial discretion to exercise, refused to exercise it a second time upon the same state of facts, and they are directly in point upon the question before us, whether it was the duty of the court of common pleas, as matter of law, to reverse their decision. In the case of *Simpson* v. *Hart*, 1 Johns. Ch. 99, the chancellor said " it is the unfitness and vexation and indecorum of permitting a party to go on successively, by way of experiment, from one concurrent tribunal to another, and thus to introduce conflicting decisions, which prevent the second inquiry." It is upon the same principle that where courts of law and equity have concurrent jurisdiction over a question, and it receives a decision

Claggett *v.* Simes.

at law, equity can no more re-examine it than the court of law, in a similar case, can re-examine a decree in a court of equity. *Anderson* v. *Roberts*, 18 Johns. 534.

The general rule, stated by Lord C. J. *De Grey*, in the *Dutchess of Kingston's case*, 20 Howell's St. Tr. 538, has always been recognized as law; that the judgment of a court of concurrent jurisdiction is as a plea, a bar, or as evidence conclusive between the same parties upon the same matters directly in question in another court. We do not say that the adjudication of the court of common pleas is a judgment in the strict and technical sense of the word, because it is only a decision made by the court, acting in a summary way, and upon a matter addressed to their discretionary jurisdiction. But the same reasons exist that caused the adoption of the rule in relation to judgments, technically so called, for it is as necessary to prevent delay and uncertainty in one case as in the other. The safe rule, and the one that will ordinarily be productive of the least injustice, is that where the facts upon which relief is claimed are the same upon a second application that they were in the first, the merits of a decision upon them will not be revised by analogy to proceedings in the ordinary course of judicial investigation. If any case can be imagined where a decision upon the merits should be considered and held to be final, it is one like the present; for the evidence of witnesses was to be weighed, the original entries upon the docket examined, and many of the facts happened in the presence, and came under the immediate observation of the court. We shall direct the court of common pleas that the proceedings already had in this case do constitute a bar to the relief prayed for, according to our practice, and by the analogy above mentioned.

*Petition dismissed.*